[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ONFIRST. SECOND AND THIRD SPECIAL DEFENSES AND FIRST THROUGH FOURTH COUNTSOF COUNTERCLAIM OF DEFENDANTS MARC P. SHORE AND DEBRA A. SHORE. MOTION#207 OF THE CLERK'S FILE.
Pursuant to Practice Book section 379, plaintiff and counterclaim defendant, Bradley S. Jacobs, moved for summary judgment on the Special Defenses of defendants Marc and Debra Shore ("Shore Defendants") and Counts One through Four of the Shore Defendants' Counterclaim.
On November 15, 1994 the plaintiff filed an amended complaint with the following introduction:
"This is an action by the owner of certain real property located in Greenwich, Connecticut, to:
(A) compel the owners of adjacent property to demolish an illegal addition to the existing dwelling unit on that property ""Existing Dwelling Unit"), for which addition no building plans were ever filed and no building permit or certificate of occupancy ever obtained ("Illegal Addition");
(B) enjoin the use and occupancy of the Existing Dwelling Unit pending demolition of the Illegal Addition, or, in the alternative, issuance of a Certificate of Occupancy for the Existing Dwelling Unit; CT Page 4054-EEE
(C) declare that the present owners of the adjacent property, defendants Marc P. Shore and Debra A. Shore, have no rights under a Special Exception and alleged "use variance" granted to the prior owner, defendant Nancy M. Colson, permitting the Existing Dwelling Unit, upon construction of a new primary dwelling unit, to be maintained as an oversize accessory building with a floor area in excess of 1200 square feet;
(D) enjoin the construction of a new primary dwelling unit on the adjacent property pending:
(i) demolition of the Illegal Addition,
(ii) issuance of a variance permitting the continued use of the Existing Dwelling Unit as a nonconforming accessory building:
(a) located in a front yard, and
(b) set back less than 75' from the front line, and
(iii) issuance of a Special Exception permitting the maintenance of the Existing Dwelling Unit as an oversize accessory building with a floor area in excess of 1200 square feet;
(E) enjoin all development of the adjacent property pending:
(i) abatement of lead and arsenic contamination of that property, and
(ii) approval of a Water Drainage survey of that property;
(F) declare the meaning of and enforce an implied negative reciprocal easement and new construction restriction affecting plaintiff's property and certain other parcels of land, including the adjacent property, and to enjoin defendants from violating that reciprocal negative easement and new construction restriction; and
(G) recover monetary damages, both compensatory and punitive, based upon the tortious conduct of the named defendants." CT Page 4054-FFF
The plaintiff then sets forth, in nine separate counts, on thirty one typewritten pages the alleged material facts which he concludes, upon proof, would support the court in awarding him the following claims for legal and equitable relief.
"(A) On the First Count, compelling the Shores to demolish the Illegal Addition;
(B) On the Second Count, prohibiting the use and occupancy of the Existing Dwelling Unit pending demolition of the Illegal Addition (to the return the building to the status quo ante) or the issuance of a Certificate of Occupancy;
(C) On the Third count, declaring that the right granted by the said Special Exception and alleged "use variance" expired upon conveyance of parcel B from Colson to the Shores on or about July 21, 1994;
(D) On the Fourth Count, prohibiting the Shores from taking any steps to construct a new primary dwelling on parcel B pending (A) demolition of the Illegal Addition, (B) issuance of a variance permitting the continued use of the Existing Dwelling Unit as a nonconforming accessory building located (i) in the front yard of Parcel B, (ii) less than 75' from the front lot line thereof, and (C) issuance of a special Exception permitting the maintenance of the Existing Dwelling Unit as an oversize accessory building with a floor area in excess of 1200 square feet;
(E) On the Fifth Count, prohibiting the Shores, their heirs, assigns and successors, and all persons acting in concert with them, or with knowledge of the injunction, from taking any steps to develop parcel B, including but not limited to construction of a new primary dwelling unit, pending abatement by them of the lead and arsenic pollution of Parcel B;
(F) On the Sixth Count, prohibiting the Shores, their heirs, assigns and successors, and all persons acting in concert with them, or with knowledge of the injunction, from taking any steps to develop parcel B, including but not limited to construction of a new primary dwelling unit, pending approval of a Water Drainage of parcel B;
(G) On the Seventh count, declaring that all new construction CT Page 4054-GGG is prohibited on either all of parcel B or, alternatively, on those portions of parcel B within the Buffer Zone;
(H) On the Eight Count, prohibiting the Shores, their heirs, assigns and successors, from undertaking any new construction on parcel B or, alternatively, on those portions of parcel B within the Buffer Zone;
(I) On the Ninth count, in such amount as may be proved upon the trial on this action on account of compensatory and punitive damages against Colson and the Shores, including but not limited to the attorneys fees and legal costs and expenses reasonably incurred by plaintiff in protecting his rights herein; and
(J) Such other and further relief as the court deems appropriate in law or in equity, including but not limited to incidental money damages proven upon the trial of this action, interest therein as provided by law, and costs.
The defendants Marc P. and Debra A. Shore on January 30, 1995 filed their answer to the amended complaint denying the truth of the material facts, plead three separate special defenses and counterclaim against the plaintiff. The defendants' special defenses are as follows:
"First Special Defense"
The plaintiff is estopped from making the claims asserted in his Complaint by virtue of his conduct, as described in the Counterclaim herein.
Second Special Defense
The Plaintiff is barred from the relief which he seeks by virtue of the doctrine of unclean hands for the reasons alleged in the counterclaim herein.
Third Special Defense to Counts 1 Through 4
1. The Defendants Shore did not own Parcel B when the addition was constructed on the Gatehouse thereon in 1990-91 and had no involvement, directly or indirectly, in any application of special exception described in the Complaint.
2. Based upon the information relating to said addition CT Page 4054-HHH adduced by the Plaintiff, the Defendants Shore are applying for permission with the Town of Greenwich to demolish said addition.
3. The Defendants Shore, through their counsel, have advised the Plaintiff, through his counsel, their intention to demolish said addition."
The Defendants' counterclaim set forth in six counts on twenty typewritten pages the defendants alleged material facts which they claim upon proof at trial would support the court in awarding them the following claims of legal and equitable relief.
"On their Counterclaims, the Defendants Marc P. Shore and Debra Shore request the following relief against the Plaintiff.
1. A temporary and permanent injunction prohibiting the Plaintiff and his agents and representatives from interfering with any and all attempts of the Defendants Shore to construct a new residential dwelling upon the real property described as "Parcel B" hereinabove and in the Complaint in this action.
2. A declaratory judgment declaring that the Defendants Shore have the right to construct a new residence on said Parcel B.
3. A temporary and permanent injunction prohibiting the use or occupancy of the Seabury House upon the real property described as "Parcel B" hereinabove and in the Complaint in this action.
4. a declaratory judgment declaring that said Seabury House may not be occupied or used unless and until a new Certificate(s) of Occupancy is issued by the Town of Greenwich for all work, repairs and renovations described on the counterclaims.
5. Such other additional equitable relief as the court deems necessary or appropriate."
The plaintiff then moved for summary judgment. Both parties filed extensive briefs with affidavits and other proof submitted to show that there is no genuine issue as to any material fact as being claimed by the plaintiff and that there is or are material facts at issue being claimed by the defendants.
SCOPE OF SUMMARY JUDGMENT
CT Page 4054-III
Practice Book § 379 provides in part: "In any action, except actions for dissolution of marriage, legal separation, or annulment of marriage and except administrative appeals which are not enumerated in Sec. 257(d), any party may move for a summary judgment at any time . . . These rules shall be applicable to counterclaims and cross complaints, so that any party may move for summary judgment upon any counterclaim or cross complaint as if it were an independent action."
When a party's motion for summary judgment is directed to a counterclaim, a separate motion for summary judgment must be filed. "A court may not grant summary judgment sua sponte. . . . The issue first must be raised by the motion of a party and supported by affidavits, documents or other forms of proof. . . . Because a counterclaim is a separate and distinct action; . . . a party seeking summary judgment on both a complaint and a counterclaim must file an appropriate motion addressed to each." (Citation(s) omitted.) Vicino v. Zoning Boardof Appeals, 28 Conn. App. 500, 611 A.2d 444 (1992), citingCummings Lockwood v. Gray, 26 Conn. App. 293, 600 A.2d 1040
(1991).
Despite the broad scope of summary judgment prescribed in Practice Book § 379, the courts have carved out various exceptions where it would be improper to grant a summary judgment motion. The courts have consistently held that, "(s)ummary judgment is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions. . . . Intent is clearly a question of fact that is ordinarily inferred from one's conduct or acts under the circumstances of the particular case." (Citation(s) omitted.) Suarez v. Dickmont Plastics Corp., supra,229 Conn. 111, citing Waterbury Petroleum Products, Inc. v.Canaan Oil Fuel Co., 193 Conn. 208, 477 A.2d 988 (1984). "It is only when the witnesses are present and subject to cross examination that their credibility and the weight to be given to their testimony can be appraised." Miller v. Bourgoin, 28 Conn. App. 491,613 A.2d 292 (1992), citing United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 260 A.2d 596 (1969). Likewise, "questions of credibility between the parties . . . raises an issue of fact which the trial court cannot resolve on a motion for summary judgment." Suarez v. Dickmont Plastics Corp.,
supra, 111, citing United Oil Co. v. Urban RedevelopmentCommission, 158 Conn. 364, 260 A.2d 596 (1968). CT Page 4054-JJJ
The Appellate Court has held that a motion for summary judgment is not the proper vehicle to test the legal sufficiency of a complaint. Burke v. Avitabile, 32 Conn. App. 765, 772,630 A.2d 624 (1993). cert. denied, 228 Conn. 908, 643 A.2d 297
(1993). Although the court acknowledged the holding in BoucherAgency Inc. v. Zimmer, 160 Conn. 404, 408, 409, 279 A.2d 540
(1971), where the Supreme Court held that a summary judgment motion is the proper way to test the legal sufficiency of a complaint after an answer has been filed, the Burke court nonetheless dismissed Boucher as anomalous since it had not been cited for such a proposition to this date Burke v. Avitabile,
supra, 32 Conn. App. 772, n. 9.
After reviewing the pleadings, briefs, affidavits and all exhibits offered, the court cannot conclude that there exists no material issues of fact as to the defendant's special defenses or counterclaims. Judge Karazin in his Memorandum on the defendant's Motion for Partial Summary Judgment (#140), filed on August 28, 1995 fund that material facts exist.
Just by reviewing the pleadings as were quoted in this memorandum it is clear that many material questions of motive, intent, subjective feelings and reaction are still at issue. Likewise, the question of credibility of the parties and their witnesses must be tested. It is only when the witnesses and parties are present in open court and their testimony and other offers of proof are subject to cross examination will their motives, intentions, subjective feelings and reactions, as heard and witnessed by the trier of the facts, become clear as to the weight to be given to that evidence. Only then can material facts be found to be or not be proven so that the court may render the appropriate relief to all parties.
The Motion for Summary Judgment (Motion #207) is denied upon a finding that substantial issues of facts exist.
RYAN, J. CT Page 4054-KKK